EDKy 520 (Rev. 01/22) Complaint under §1983 or Bivens Action

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
Central **DIVISION at** Lexington

Eastern District of Kentucky
FILED
JUL 20 2026
AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 5:26-cv-274-KKC (Court Clerk will supply)

HyPer Quency Modula
PLAINTIFF

VS:

Demand for Jury Trial:
Yes (___) No (♥)

lextran, transit authority of Lexington ~~fayette~~ urban county (do not use "et al.", enter full names)
William Gill
Officer R.C. Holland
LFUCG

DEFENDANTS

**I. Plaintiff:**

A. Name (list any aliases): HyPer Quency Modula AKA. aysia [illegible]

B. Prisoner ID #: N/a Check one: Convicted N/a Pretrial Detainee N/a

C. Place of present confinement: Not a Prisoner / Not confined

D. Address: ~~N/A~~ 1018 e New circle rd #105C lexington, ky, 40505, usa. (Mailing)

**II. Defendant(s):** (additional defendants may be listed on a separate sheet of paper)

A. Defendant's Name: LFUCG, Officer R.C. Holland.
Title or Position: 200 E Main St, Lexington, ky, usa, 40507.
Place of Employment: ___

B. Defendant's Name: Lextran, William Gill.
Title or Position: 200 WEST Loudon Avenue, 40508, Lexington, KY, usa.
Place of Employment: ___

C. Defendant's Name: ______

Title or Position: ______

Place of Employment: ______

D. Defendant's Name: ______

Title or Position: — No More Defendants —

Place of Employment: ______

E. Defendant's Name: ______

Title or Position: ______

Place of Employment: ______

## III. Statement of Claim:

Below you should state the **FACTS** of your case. You don't need to make legal arguments or refer to any cases or statutes.

If you wish to allege a number of related claims, write out each claim in a separate numbered paragraph. (If you need more space, you may attach extra sheets).

A. What happened? Explain specifically what each Defendant did or failed to do.

Please See Attached Pages

On Next Page

(3 of 3)

**Additional Pages FOR EDKY 520 — Modula v. LexTran / William G. / Officer R.C. Holland / LFUCG**

Civil Action No. 5:26-cv-274-KKC

**I. Plaintiff**

Name (list any aliases): Hyper Quency Modula, f/k/a Aysia Jamilia/Jamillia Carlette Fox-Thompson. "f/k/a" = formerly known as — Hyper Quency Modula is the current legal name. Prisoner ID#: N/A. Place of confinement: N/A — not currently confined. Address: 1018 E. New Circle Rd #105C, Lexington, KY 40505 (mailing; no confirmed residential address — see Notice of Correction).

**II. Defendants (use additional sheet if more than 5)**

**A. LexTran (Transit Authority of LFUCG)**

Title/Position: N/A — public body corporate

Place of Employment: N/A

**B. William G.**

Title/Position: LexTran Supervisor

Place of Employment: LexTran

**C. Officer R.C. Holland**

Title/Position: Police Officer

Place of Employment: Lexington Police Department

**D. Lexington-Fayette Urban County Government (LFUCG)**

Title/Position: N/A — municipal government entity

Place of Employment: N/A

**III.A What happened?**

On May 13, 2026, at approx. 4:00 PM, Plaintiff attempted to board LexTran Route 6 with her e-bike. LexTran's published policy allows two bicycles per bus rack with no e-bike restriction; Dispatch had already told the operator the e-bike could ride that day. The operator denied service anyway. Supervisor William G. approached Plaintiff — his own incident report confirms he was dispatched only to take a photograph, not to enforce any policy. Plaintiff began recording and asked why she was being stopped. William G.'s written report renders her one-word question as "WHY!" in capital letters and states she was "super aggressive," while his own report describes no policy violation, no threat, and no harm to any person, and concludes Plaintiff "finally left the property" calmly. William G. told Plaintiff, in substance, "if we say that you can't ride the bus with this bike then you won't be able to go about your day," then touched her bicycle after being told not to, and declared she could not ride the bus for the rest of the day — an exclusion he had no legal authority to issue. He called police and told

Officer Holland Plaintiff was "aggressive with other people," a claim that appears nowhere in his own written report. Officer Holland arrived, accepted William G.'s account without independent investigation, physically moved Plaintiff's bicycle without consent, and compelled her to leave. This followed two earlier related incidents: a retaliatory arrest at the LexTran Transit Center on March 13, 2026 (all charges later dismissed), and a May 7, 2026 safety complaint Plaintiff filed after a different LexTran bus operator nearly caused a similar safety incident.

**III.B When did these events happen?**

May 13, 2026, approximately 4:00 PM. (Related prior incidents: March 13, 2026, and May 7, 2026.)

**III.C Where did these events happen?**

LexTran bus (Route 6, Bus 1704) and the LexTran Transit Center, Lexington, Fayette County, Kentucky.

**III.D What rights were violated?**

First Amendment (retaliation); Fourth Amendment (unlawful seizure of property and person); Fourteenth Amendment (procedural due process, equal protection), each under 42 U.S.C. § 1983; Monell v. Dep't of Social Services, 436 U.S. 658 (1978); Title VI, 42 U.S.C. § 2000d; KRS 344.120; KRS 519.040(1)(d); KRS 525.070; KRS 446.070; Kentucky common law trespass to chattels/conversion.

**IV. Exhaustion of Administrative Remedies**

N/A — Plaintiff is not a prisoner and was not confined at the time of the events described.

**V. Other Lawsuits**

YES — Plaintiff has multiple other pending/recently-dismissed civil actions in this Court arising from a related pattern of conduct by overlapping Fayette County/LFUCG defendants, including: Modula v. Jones et al. (5:26-cv-00250-KKC); Modula v. Transit Authority of LFUCG et al. (5:26-cv-00227-SCM); Modula v. Fayette County Detention Center et al.; Modula v. Stockman et al.; and Modula v. Key Assets Kentucky, Inc. et al. (5:26-cv-251-REW). See attached sheet for full details of each (case numbers, courts, filing dates, and outcomes) as required by Section V.C. NOTE: This action was removed to this Court by Defendants on June 16, 2026; a Motion to Dismiss has been briefed. Confirm with the Court how refiling on EDKY 520 should be coordinated with the existing motion practice before submitting.

**VI. Relief**

Plaintiff requests compensatory damages to be proven at trial; punitive damages against William G. and Officer Holland individually; a declaratory judgment that Defendants' conduct violated the First, Fourth, and Fourteenth

Amendments and Title VI; injunctive relief requiring LFUCG/LexTran to train supervisors on published bicycle policy, require independent investigation by LPD before seizing a passenger or their property, and ensure accurate incident reporting; adverse inference sanctions for any suppressed evidence; and costs and fees under 42 U.S.C. § 1988.

AO 3 of 3

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF KENTUCKY**

**CENTRAL DIVISION AT LEXINGTON**

**CIVIL ACTION NO.** 5:26-cv-274-KKC

**HYPER QUENCY MODULA,**

*Plaintiff,*

v.

**LEXTRAN (TRANSIT AUTHORITY OF LEXINGTON-FAYETTE URBAN COUNTY GOVERNMENT);**

**WILLIAM G., LexTran Supervisor, in his individual and official capacity;**

**OFFICER R.C. HOLLAND, Lexington Police Department, in his individual and official capacity; and**

**LEXINGTON-FAYETTE URBAN COUNTY GOVERNMENT,**

*Defendants.*

**COMPLAINT**

*(Non-Jury / Bench Trial Requested)*

42 U.S.C. § 1983 | First, Fourth, and Fourteenth Amendments

KRS 519.040 | KRS 525.070 | KRS 446.070

Monell Municipal Liability | False Reporting | Fabricated Incident Report | Evidence of Record Falsification

*Filed by: Hyper Quency Modula, Pro Se Plaintiff | Lexington, Kentucky*

## I. INTRODUCTION

**1.** Plaintiff brings this Complaint supported by, among other things: (a) the official incident report authored by Defendant William G., incorporated herein and attached as Exhibit A; and (b) video footage documenting other LexTran passengers boarding buses with e-bikes without incident, attached as Exhibit I. Together, this evidence confirms that the e-bike restriction applied to Plaintiff was not applied to other riders, that Defendant William G.'s own report describes no policy violation by Plaintiff, and that the exclusion, police report, and seizure that followed had no basis in any written or actually-enforced LexTran policy.

**2.** This action arises from a series of retaliatory and unlawful acts committed against Plaintiff on May 13, 2026, against the backdrop of two earlier related incidents on March 13, 2026, and May 7, 2026, all occurring at or in connection with LexTran facilities and personnel.

**3.** Plaintiff recorded the complete May 13, 2026 incident on her personal device. Defendants Holland and LFUCG have conventionally filed a USB drive purporting to contain Plaintiff's video and Officer Holland's body-worn camera footage. Plaintiff reserves all rights to address that footage fully once reviewed.

**4.** On May 13, 2026, Defendants, acting individually and in concert: enforced a bicycle restriction that is not applied to other riders and does not appear in any LexTran publication; retaliated against Plaintiff for recording the encounter and questioning its basis; physically interfered with her personal property without consent; filed a false report to law enforcement; issued a trespass exclusion without legal authority; and seized Plaintiff's person and property without cause.

**5.** Defendant William G.'s own official incident report, incorporated herein and attached as Exhibit A, independently confirms that: (a) Dispatch told the operator the e-bike could ride that day; (b) William G.'s only assigned task was to photograph the bike for an internal email, not to enforce any policy; (c) the report describes no policy violation, no threat, and no conduct by Plaintiff beyond asking why she was being approached; and (d) the report contains internal inconsistencies consistent with a narrative composed after the fact rather than a contemporaneous account.

**6.** These acts violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution (42 U.S.C. § 1983), KRS 519.040, KRS 525.070, KRS 446.070, and Kentucky common law.

## II. PARTIES

**7.** Plaintiff Hyper Quency Modula is a resident of Lexington, Fayette County, Kentucky, and a regular fare-paying passenger of LexTran public transit who relies on a bus-and-bicycle commute as her primary mode of transportation.

**8.** Defendant LexTran (Transit Authority of Lexington-Fayette Urban County Government) is a public transit agency operating under LFUCG authority, receiving federal financial assistance, and subject to KRS Chapter 344.

**9.** Defendant William G. is a LexTran supervisor acting under color of state law at all relevant times, sued in his individual and official capacities. His full surname is presently unknown to Plaintiff and will be confirmed through discovery and the pending Open Records request.

**10.** Defendant Officer R.C. Holland is a law enforcement officer employed by the Lexington Police Department, acting under color of state law at all relevant times, sued in his individual and official capacities.

**11.** Defendant Lexington-Fayette Urban County Government ('LFUCG') is the municipal government responsible for the Lexington Police Department and, through LexTran, for the conduct of LexTran personnel including Defendant William G. LFUCG is directly liable under Monell v. Department of Social Services, 436 U.S. 658 (1978); Owen v. City of Independence, 445 U.S. 622 (1980); Howlett v. Rose, 496 U.S. 356, 375-76 (1990).

## III. JURISDICTION AND VENUE

**12.** This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a).

**13.** Venue is proper in this district under 28 U.S.C. § 1391(b) because all Defendants reside in this district and all events giving rise to Plaintiff's claims occurred in Fayette County, Kentucky.

**14.** This action was removed to this Court by Defendants Holland and LFUCG on June 16, 2026. Plaintiff does not contest removal and pursues her federal and state claims together in this forum.

## IV. WILLIAM G.'S INCIDENT REPORT — EVIDENCE OF FABRICATION

### *A. The Report, Reproduced in Full*

**15.** Defendant William G. authored an official LexTran incident report concerning the events of May 13, 2026. The report reads, in its entirety and word for word, as follows:

> *"Incident involved Dispatch got a call from the operator on route 6 asking if electric bikes where allowed to ride on the bike rack of the bus. After dispatched explained to the operator that he can let them ride today, but he will look into it with the safety director. Dispatched then asked for me to take a picture of the bike so he could add it to the email he was sending the safety director. Around 4:50 pm i was informed by the operator that the passenger was down in bay 5 so i could go talk to them. When i was approaching bay 5 i seen an individual with a bike, so i went to ask the passenger if they just got of route 6 and they came back with WHY! i then asked the passenger to calm down there is no reason to be aggressive and the passenger continued to be disrespectful and super aggressive while i was talking to them. After the disrespect continued to go on i just informed the passenger that they will not be able to ride the bus for the rest of the day. The passenger told me they was riding the bus, so i called metro over to escort the passenger off the property. The passenger continue to disrespect the officer, but finally left the property."*

### *B. Admissions Against Interest*

**16.** Admission No. 1 — Dispatch Authorized the Bike to Ride. The report states that Dispatch told the operator he could let the e-bike ride that day. There was no policy violation and no basis for exclusion: Dispatch, LexTran's own internal authority, had already granted authorization before William G. ever approached Plaintiff.

**17.** Admission No. 2 — William G.'s Only Assigned Task Was to Photograph the Bike. The report confirms William G. was dispatched to take a photograph for an internal email, not to enforce a policy or remove a passenger. The confrontation, the ban, the police call, and the seizure that followed all exceeded the scope of his assignment.

**18.** Admission No. 3 — No Description of Any Policy Violation. The report identifies no LexTran policy Plaintiff violated, no written rule, and no act of violence, threat, or harm. The only conduct attributed to Plaintiff is a single-word question.

**19.** Admission No. 4 — The Report Does Not Support What Was Told to Officer Holland. The report states only that William G. called for an escort. It contains no mention of Plaintiff being 'aggressive with other people' — the characterization Plaintiff's video footage and Defendants' own filings confirm was given to Officer Holland. The report supplies no factual basis for that characterization because it does not describe any other person.

### *C. Indicators of Post-Hoc Composition*

**20.** Several features of the report are consistent with an account written after the fact to justify a decision already made, rather than a contemporaneous record: (a) the report renders Plaintiff's single-word response as 'WHY!' in all capitals, a stylistic choice used to convey aggression that is not supported by any other described conduct; (b) the report contains multiple grammatical irregularities — an incomplete opening sentence, a homophone error ('where' for 'were'), a missing preposition ('got of' for 'got off'), and subject-verb disagreements ('continue' for 'continued,' 'was' for 'were') — a pattern more consistent with hurried, retrospective drafting than a careful contemporaneous account; (c) the report describes Plaintiff as 'disrespectful and super aggressive' throughout, yet concludes that she 'finally left the property,' an ending inconsistent with the extreme characterization in its body; and (d) the report omits that Dispatch had already authorized the ride, that William G. touched Plaintiff's bicycle after being told not to, and that Plaintiff was recording the encounter — omissions material to any accurate account of the incident.

*D. Legal Significance of the Report*

**21.** The incident report is admissible as a party admission under Fed. R. Evid. 801(d)(2), having been authored by Defendant William G. in his official capacity as a LexTran supervisor.

**22.** Evidence of fabrication or false statements in an official report is circumstantial evidence relevant to a defendant's state of mind and consciousness of wrongdoing. United States v. Mendez-Ortiz, 810 F.2d 76, 79 (6th Cir. 1986).

**23.** The report is directly relevant to Plaintiff's false reporting claim under KRS 519.040(1)(d): the gap between what William G. wrote and what he told Officer Holland is the false report.

## V. EVIDENCE

*A. Plaintiff's Video Footage — May 13, 2026*

**24.** Plaintiff recorded the entirety of the May 13, 2026 incident on her personal device. This footage captures the operator's initial denial of service, William G.'s approach and statements, his handling of Plaintiff's bicycle after being told not to touch it, Plaintiff's calm demeanor throughout, and the circumstances of her departure from the property — directly contradicting the 'super aggressive' characterization in William G.'s incident report.

*B. William G.'s Incident Report — Exhibit A*

**25.** Defendant William G.'s incident report, reproduced in full in Section IV above, is incorporated herein by reference as Exhibit A and constitutes an admission by a party-opponent under Fed. R. Evid. 801(d)(2).

*C. Officer Holland's Body-Worn Camera Footage*

**26.** Defendants Holland and LFUCG have conventionally filed body-worn camera footage with the Court. Plaintiff disputes Defendants' characterization of this footage and avers that it, properly viewed alongside William G.'s own report and Plaintiff's video, corroborates Plaintiff's account. Any factual dispute over the footage's meaning is not resolvable on a motion to dismiss. Tolan v. Cotton, 572 U.S. 650, 657-60 (2014).

*D. Comparator Video Evidence — Other E-Bike Riders*

**27.** Plaintiff has obtained, and continues to gather, video footage documenting other LexTran passengers boarding buses with e-bikes on dates other than May 13, 2026, without denial of service, exclusion, or police involvement, including statements from those riders confirming that they boarded with an e-bike without issue. This evidence, to be attached as Exhibit I, establishes that no e-bike restriction is in fact applied to LexTran passengers generally, that no such restriction is a matter of consistent policy or practice, and that Plaintiff was singled out for treatment not applied to similarly situated riders. This evidence directly supports Plaintiff's claim under Count IV (Equal Protection) below.

***E. LexTran's June 1, 2026 Response — The Only Bicycle-Related Policy LexTran Identifies Does Not Address E-Bikes***

**28.** Plaintiff's May 18, 2026 Open Records request specifically sought 'any documentation, policy, or internal directive issued to LexTran employees or law enforcement regarding enforcement of bicycle-related rules at the Transit Center.' In a supplemental response dated June 1, 2026, incorporated herein and attached as Exhibit L, counsel for LexTran identified exactly one responsive record: a memorandum dated May 2, 2024, from LexTran's Director of Safety & Security to all operators, titled '2-Wheel Scooters on LexTran Vehicles,' attached as Exhibit M. That memorandum addresses only two-wheel scooters and spin bikes, stating that folding two-wheel scooters may be brought inside the coach if they do not block the aisle, that each LexTran bus is equipped with a bike rack capable of carrying two standard-size bicycles, that no bicycles are permitted inside the coach cabin, and that spin bikes are not authorized for transport. The memorandum says nothing about electric bicycles or e-bikes, does not exclude e-bikes from the bike rack, and predates the May 13, 2026 incident by more than two years. This is the single document LexTran itself identifies as governing bicycle rule enforcement, and it confirms on its face that no e-bike-specific restriction exists within it.

**29.** Plaintiff's May 18, 2026 request also sought 'any records of prior incidents, citations, exclusion notices, or reports involving bicycle riding on LexTran Transit Center property for the period January 1, 2024 through May 16, 2026.' LexTran's June 1, 2026 response confirms that, after conducting a search, it identified no records responsive to this request. No passenger, at any point in the more than two years preceding the incident, had ever been cited, excluded, or reported for bicycle riding at the Transit Center other than Plaintiff. This confirms the differential treatment underlying Plaintiff's Equal Protection claim under Count IV below and further supports Plaintiff's Monell claim under Count V that the May 13, 2026 enforcement action was without precedent or policy basis.

***F. LexTran's Employee Code of Conduct — William G.'s Conduct as an Immediate-Termination Offense Under LexTran's Own Rules***

**30.** LexTran's Code of Conduct, effective June 15, 2025 and produced in response to Plaintiff's May 18, 2026 request as Exhibit N, classifies as an Immediate Termination Work Rule any employee's knowingly making written false statements in reports or documents to the Company, as well as any attempt to conceal or misrepresent the facts of an accident or incident. Under LexTran's own written standards, the fabrications and material omissions in William G.'s incident report described in Section IV above are the type of conduct calling for immediate termination. LexTran's July 17, 2026 Open Records response, described below and attached as Exhibit K, nonetheless confirms that no discipline, retraining, or corrective action was ever taken against

William G. This gap between LexTran's own written standards and its actual response to William G.'s conduct is direct evidence of ratification supporting Plaintiff's Monell claim under Count V below.

*G. LexTran's July 17, 2026 Response — Confirmation of No Written E-Bike Policy or Training Materials*

**31.** Plaintiff submitted Open Records requests to LexTran on May 18, 2026, June 8, 2026, and July 11, 2026. Counsel for LexTran responded in writing on July 17, 2026, incorporated herein and attached as Exhibit K. That response confirms the following without qualification, certifying that LexTran conducted a search and has no responsive records: (a) no dispatch communication logs or recordings exist for LexTran Route 6 on May 13, 2026, between approximately 3:30 PM and 5:30 PM — the window encompassing the incident; (b) no internal email, photograph, or communication from William G. to the LexTran Safety Director exists, despite William G.'s own incident report describing exactly such a communication; and (c) no policy guidance or instruction was issued to the Route 6 bus operator on May 13, 2026, regarding electric bicycles.

**32.** The response further states that LexTran has no records beyond what it already produced in response to Plaintiff's earlier May 18, 2026 and June 8, 2026 requests for: all current and archived LexTran policies concerning bicycles or e-bikes on bus racks; all training materials, memoranda, or internal communications provided to supervisors and operators concerning bicycle or e-bike rack policy; any record reflecting that a restriction specific to electric bicycles has ever existed in any LexTran policy, publication, or internal guidance; any complaints, disciplinary actions, retraining records, or incident reports involving William G. as a LexTran supervisor; any record of discipline, retraining, or corrective action taken as a result of the May 13, 2026 incident; and any incident reports, complaints, or logs involving other LexTran passengers and bicycles or e-bikes from January 1, 2024 to present. Having now been asked for these categories of records across three separate requests spanning more than two months, and having produced nothing reflecting a written e-bike-specific restriction, applicable training materials, or any disciplinary or corrective action taken against William G., LexTran's own responses are strong evidence that no such records exist and that the enforcement action described herein had no policy basis of any kind.

**33.** The absence of any dispatch communication log for the relevant window is also relevant to Plaintiff's request for adverse inference relief below, to the extent such records existed at the time of the incident and were not preserved.

*H. Anticipated Footage and Records — Prior Incidents*

**34.** Plaintiff has filed Open Records requests for interior bus camera footage and incident reports connected to the March 13 and May 7, 2026 incidents.

## VI. STATEMENT OF FACTS

*A. Prior Incident No. 1 — March 13, 2026 — LexTran Transit Center*

**35.** On March 13, 2026, Plaintiff was arrested at the LexTran Transit Center by a Lexington Police Department officer. All charges arising from that arrest were subsequently dismissed in their

entirety. That arrest and its dismissal are relevant background to the pattern of treatment Plaintiff has experienced at LexTran facilities.

***B. Prior Incident No. 2 — Bus 9, May 7, 2026***

**36.** On or about May 7, 2026, a LexTran bus operator on Bus 9 began pulling away from the stop while Plaintiff was directly in the boarding area, creating a safety hazard. Plaintiff submitted a formal written safety complaint to LexTran requesting footage review, operator identification, and a written response. This paragraph is offered as background context; Plaintiff does not presently allege a standalone retaliation claim based on this incident absent confirmation, through discovery, of the operator's identity.

***C. May 13, 2026 — Fabricated Policy Enforcement, Route 6***

**37.** On May 13, 2026, at approximately 4:00 PM, Plaintiff boarded or attempted to board LexTran Route 6, believed to be Bus 1704, with her standard e-bike. LexTran's published policy states that all buses are equipped with a bike rack capable of carrying two standard-size bicycles, subject only to both slots not already being occupied. LexTran publishes no restriction on e-bikes, and Plaintiff's comparator video evidence, described in Section V(D) above, confirms that no such restriction is applied to other riders in practice. The only bicycle-related policy LexTran itself has identified in this litigation, described in Section V(E) above, is a 2024 memorandum addressing two-wheel scooters and spin bikes; it contains no reference to e-bikes and imposes no e-bike-specific restriction.

**38.** Plaintiff's e-bike is a standard-size, pedal-operated bicycle with a conventional frame and standard-size wheels, equipped with an electric motor assist. It is not a moped-style or seated scooter device, is not oversized, and is visually indistinguishable from an ordinary bicycle absent close inspection. Plaintiff selected this e-bike specifically because its dimensions conform to standard bicycle-rack specifications and because it can be used and stored like any ordinary bicycle. Plaintiff's e-bike is dimensionally and visually distinct from the seated, motorized scooter depicted in the May 2, 2024 memorandum LexTran identifies as its bicycle-related policy, Exhibit M, and falls squarely within the category of 'standard size bicycles' that LexTran's own bike racks and internal guidance describe as permitted.

**39.** The bus operator on duty denied Plaintiff permission to place her e-bike on the rack, citing an alleged e-bike restriction that has no basis in any LexTran published policy. William G.'s own incident report confirms that Dispatch told the operator he could let the e-bike ride that day, making the denial of service inconsistent even with LexTran's own internal directive on that date.

***D. May 13, 2026 — First Amendment Retaliation for Recording and Speech***

**40.** Plaintiff began recording the interaction and verbally questioned the basis for the denial of service and, later, the basis for her exclusion — both constitutionally protected activity. Immediately following Plaintiff's recording and questioning, the characterization of Plaintiff shifted to 'aggressive' and law enforcement was summoned, despite Plaintiff's composure, as reflected in her footage and in William G.'s own report.

***E. May 13, 2026 — Coercive Threat Against Transit Access***

**41.** Defendant William G. approached Plaintiff, though his own report confirms he was dispatched only to take a photograph. He nonetheless threatened Plaintiff's transit access, stating in substance that if they determined she could not ride the bus with her bike, she would not be able to go about her day. Using access to federally funded public transit as a coercive threat, in direct response to Plaintiff's protected speech, is actionable under 42 U.S.C. § 1983.

***F. May 13, 2026 — Unauthorized Handling of Plaintiff's Property***

**42.** Plaintiff expressly told Defendant William G. not to touch her property, a statement captured on video. William G. proceeded to physically inspect and handle Plaintiff's bicycle without consent, constituting trespass to chattels under Kentucky common law and KRS 446.070.

***G. May 13, 2026 — Unlawful Trespass/Exclusion***

**43.** Defendant William G. declared that Plaintiff could not ride the bus for the remainder of the day. His own report confirms this decision, while simultaneously confirming that no policy violation occurred and that Dispatch had already authorized the ride. William G. is not a law enforcement officer and has no legal authority under Kentucky law to issue a trespass notice, rendering the exclusion void on its face. LexTran's June 15, 2026 Open Records response, incorporated herein and attached as Exhibit J, confirms that after conducting a search, LexTran identified no trespass record of any kind in its custody or control related to the incident — meaning William G.'s purported exclusion was never even documented as a formal trespass action, consistent with its having been issued without any legal authority to do so.

***H. May 13, 2026 — False Report to Law Enforcement***

**44.** Defendant William G. called law enforcement and reported that Plaintiff was 'aggressive with other people.' His own incident report describes no other person and no conduct directed at any other person. Plaintiff's video footage refutes the 'aggressive' characterization, and William G.'s own report refutes the 'with other people' characterization. KRS 519.040(1)(d) prohibits knowingly giving false information to a law enforcement officer with intent to implicate another.

***I. May 13, 2026 — Harassment***

**45.** Throughout the interaction, Defendant William G. repeatedly stated 'have a nice day sir' in a manner Plaintiff experienced as mocking and dismissive, while simultaneously denying her rights and summoning law enforcement against her. Plaintiff remained calm throughout, as her video footage confirms. This conduct is actionable under KRS 525.070(1)(c).

***J. May 13, 2026 — Failure to Investigate by Officer Holland***

**46.** Officer Holland arrived, accepted William G.'s characterization without independent investigation, and did not review readily available evidence — including LexTran's published bike policy or Plaintiff's own footage — before taking adverse action against Plaintiff.

***K. May 13, 2026 — Seizure of Property by Officer Holland***

**47.** When Plaintiff attempted to place her bicycle on the bus rack, Officer Holland physically intervened, placing his hands on Plaintiff's personal property and moving it without her consent, a warrant, or probable cause. A Fourth Amendment seizure of property occurs upon any meaningful interference with an individual's possessory interest, regardless of duration. United States v. Jacobsen, 466 U.S. 109, 113 (1984); Soldal v. Cook County, 506 U.S. 56, 61-62 (1992).

*L. May 13, 2026 — Seizure of Person by Officer Holland*

**48.** Officer Holland, relying solely on William G.'s report and unlawful exclusion order, compelled Plaintiff to leave public transit property she had a legal right to access, through directives a reasonable person would not have felt free to disregard. Florida v. Bostick, 501 U.S. 429, 434-35 (1991); Brendlin v. California, 551 U.S. 249, 254-55 (2007).

*M. Admissions in Defendants' Motion to Dismiss*

**49.** Defendants Holland and LFUCG's Memorandum in Support of their Motion to Dismiss admits that Officer Holland personally and physically moved Plaintiff's bicycle without her consent, and that Holland's only basis for the exclusion was 'confirming' what William G. told him, not independent investigation. Defendants' filing also concedes that seven federal circuit courts recognize a public right to record police performing official duties in public, and that LFUCG and LexTran cannot assert qualified immunity. Owen v. City of Independence, 445 U.S. 622 (1980); Leatherman v. Tarrant Cnty. Narcotics Intel. Unit, 507 U.S. 163 (1993).

## VII. POLICY, CUSTOM, AND FAILURE TO TRAIN (MONELL)

**50.** Defendants LFUCG and LexTran are liable under 42 U.S.C. § 1983 because the violations alleged above were caused by their own policies, customs, and deliberately indifferent failures to train and supervise. Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); City of Canton v. Harris, 489 U.S. 378 (1989).

**51.** Failure to train supervisors on LexTran's own policies: William G.'s own report confirms that whether e-bikes could ride was still being 'looked into' with the safety director on the day of the incident. LexTran's July 17, 2026 Open Records response, described in Section V(G) above and attached as Exhibit K, confirms LexTran has no training materials, memoranda, or internal communications provided to supervisors or operators concerning bicycle or e-bike rack policy, and no record that a written e-bike-specific restriction has ever existed — establishing the absence of training as a matter of LexTran's own admission, not merely inference.

**52.** Failure to train LPD officers at transit facilities: LFUCG failed to train Lexington Police Department officers dispatched to LexTran facilities on the necessity of independent investigation before seizing the person or property of a transit passenger based solely on a transit employee's unverified report. City of Canton, 489 U.S. at 390.

**53.** Failure to train on accurate incident reporting: LFUCG and LexTran failed to train supervisors on the requirements for accurate incident reporting, resulting in an official report that omits material facts, contains an unsupported characterization relayed to law enforcement, and reflects the indicators of post-hoc composition described in Section IV(C) above.

**54.** Ratification and failure to discipline: LexTran's July 17, 2026 Open Records response confirms LexTran has no record of discipline, retraining, or corrective action taken as a result of the May 13, 2026 incident, and no additional disciplinary or complaint history for William G. beyond what was previously produced. No LFUCG or LexTran employee involved in the March 13, May 7, or May 13 incidents has been disciplined, retrained, or had the relevant conduct corrected.

## VIII. CAUSES OF ACTION

**COUNT I — 42 U.S.C. § 1983 — First Amendment Retaliation**

*Against Defendants William G. and Officer R.C. Holland (individual capacities); against LFUCG and LexTran (Monell)*

**55.** Plaintiff incorporates all preceding paragraphs. Plaintiff engaged in protected activity — verbally questioning and challenging the basis for William G.'s actions, and recording the encounter. Defendants took adverse action directly in response to that protected activity. Plaintiff's video footage and William G.'s own report establish the causal link.

**56.** The right to verbally challenge or question police and government action without risking arrest or retaliation is clearly established Supreme Court precedent, not dependent on any unsettled circuit question. City of Houston v. Hill, 482 U.S. 451, 461-63 (1987) ('the freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state'). William G.'s own report confirms that Plaintiff's response to being approached — the word 'why' — was the triggering event for the exclusion and police call that followed, directly tying the adverse action to protected speech, independent of any question regarding the right to record.

**COUNT II — 42 U.S.C. § 1983 — Fourth Amendment — Unlawful Seizure of Property**

*Against Defendant Officer R.C. Holland (individual capacity); against LFUCG (Monell)*

**57.** Plaintiff incorporates all preceding paragraphs. Officer Holland physically seized and interfered with Plaintiff's personal property without consent, warrant, or probable cause. Jacobsen, 466 U.S. at 113; Soldal, 506 U.S. at 61-62. This conduct is separately actionable as trespass to chattels and/or conversion under KRS 446.070.

**58.** The right to be free from a warrantless, non-consensual seizure of personal property absent probable cause has been clearly established Supreme Court law since Soldal v. Cook County, 506 U.S. 56 (1992), which held that a Fourth Amendment seizure of property occurs upon any meaningful interference with a possessory interest, without regard to whether the conduct also implicates a separate criminal law. No reasonable officer could have believed physically moving Plaintiff's bicycle without her consent, a warrant, or probable cause was lawful.

**COUNT III — 42 U.S.C. § 1983 — Fourth Amendment — Unlawful Seizure of Person**

*Against Defendant Officer R.C. Holland (individual capacity); against LFUCG (Monell)*

**59.** Plaintiff incorporates all preceding paragraphs. Officer Holland compelled Plaintiff's removal from public transit property through directives a reasonable person would not feel free to disregard, without probable cause of any crime or policy violation. Bostick, 501 U.S. at 434-35; Brendlin, 551 U.S. at 254-55. Holland's own admission that his sole basis was 'confirming' William G.'s account, without independent investigation, makes this seizure constitutionally unreasonable on its face.

**60.** It is clearly established in this Circuit that an officer cannot simply turn a blind eye toward potentially exculpatory evidence known to him in determining probable cause. Ahlers v. Schebil, 188 F.3d 365, 371-72 (6th Cir. 1999). William G.'s own report — describing no policy violation, no threat, and no conduct by Plaintiff beyond a single question — was available to Officer Holland and directly contradicted the characterization on which he acted. An anonymous or uncorroborated

tip, standing alone and unverified, does not establish reasonable suspicion or probable cause. Florida v. J.L., 529 U.S. 266, 270-71 (2000).

**COUNT IV — 42 U.S.C. § 1983 — Fourteenth Amendment — Equal Protection**

*Against All Defendants*

**61.** Plaintiff incorporates all preceding paragraphs. Plaintiff was intentionally treated differently from other similarly situated LexTran passengers without any rational basis. Village of Willowbrook v. Olech, 528 U.S. 562 (2000). Plaintiff's comparator video evidence, described in Section V(D) above, documents specific similarly situated passengers who boarded with e-bikes on other dates without denial of service, exclusion, or police involvement — establishing the differential treatment this claim requires. This is further corroborated by LexTran's own June 1, 2026 Open Records response, Exhibit L, confirming that no other passenger was cited, excluded, or reported for bicycle riding at the Transit Center at any point between January 1, 2024 and May 16, 2026 — meaning Plaintiff was the only passenger subjected to this treatment in over two years.

**COUNT V — 42 U.S.C. § 1983 — Monell — Policy, Custom, and Failure to Train**

*Against Defendants LFUCG and LexTran*

**62.** Plaintiff incorporates all preceding paragraphs, including Section VII. The pattern of incidents at LexTran facilities, combined with Defendants' failure to train supervisors on LexTran's own published policies, failure to train LPD officers on independent investigation, failure to train supervisors on accurate incident reporting, and ratification through inaction, establishes a policy or custom that was the moving force behind the constitutional violations alleged herein. Monell, 436 U.S. 658; City of Canton, 489 U.S. 378. LexTran's own July 17, 2026 Open Records response, Exhibit K, confirms the absence of training materials, written e-bike policy, and any disciplinary or corrective record, removing this claim from the realm of inference. LexTran's June 1, 2026 response, Exhibit L, further confirms that the only bicycle-related policy document LexTran can identify, Exhibit M, does not address e-bikes at all. Finally, LexTran's own Code of Conduct, Exhibit N, classifies the type of conduct at issue in William G.'s report as an immediate-termination offense, yet no discipline was ever imposed — direct evidence of ratification.

**COUNT VI — KRS 519.040(1)(d) and KRS 446.070 — False Reporting to Authorities**

*Against Defendant William G.*

**63.** Plaintiff incorporates all preceding paragraphs. William G. reported to Officer Holland that Plaintiff was 'aggressive with other people.' His own incident report mentions no other people and confirms the only conduct Plaintiff engaged in was asking why she was being approached. Plaintiff is entitled to civil recovery for all damages proximately caused by this false report, including the police seizure of her person and property.

**COUNT VII — KRS 525.070 and Kentucky Common Law — Harassment**

*Against Defendant William G.*

**64.** Plaintiff incorporates all preceding paragraphs. KRS 525.070(1)(c) prohibits offensively coarse utterances or abusive language made with intent to intimidate, harass, annoy, or alarm. Defendant William G.'s conduct, described in Section VI(I) above, occurring while he simultaneously denied Plaintiff her rights, summoned law enforcement, and filed a false report

against her, constitutes harassment under KRS 525.070. Civil damages are recoverable under KRS 446.070.

**COUNT VIII — Kentucky Common Law and KRS 446.070 — Trespass to Chattels / Conversion**

*Against Defendants William G. and Officer R.C. Holland*

**65.** Plaintiff incorporates all preceding paragraphs. Both Defendants physically interfered with Plaintiff's bicycle without consent or legal authority — William G. by handling it after being expressly told not to, and Officer Holland by physically moving it without consent — constituting trespass to chattels and/or conversion under Kentucky common law, entitling Plaintiff to compensatory damages under KRS 446.070.

**COUNT IX — 42 U.S.C. § 1983 | KRS 519.040 | KRS 446.070 — Record Falsification / Official Document Fabrication**

*Against Defendant William G., individually and in his official capacity; against LexTran and LFUCG (Monell)*

**66.** Plaintiff incorporates all preceding paragraphs. Defendant William G. authored and submitted an official LexTran incident report that omits the material fact that Dispatch had already authorized the e-bike to ride, omits that William G. touched Plaintiff's bicycle after being told not to, characterizes Plaintiff in terms inconsistent with the report's own described conclusion, and reflects the indicators of post-hoc composition described in Section IV(C) above. LexTran's July 17, 2026 Open Records response, Exhibit K, further confirms that no email, photograph, or communication to the Safety Director exists — the very communication William G.'s report describes him being sent to create — further undermining the report's reliability as a contemporaneous account. LexTran's own Code of Conduct, Exhibit N, classifies knowingly making written false statements in reports and misrepresenting the facts of an incident as Immediate Termination Work Rule violations, confirming that the conduct alleged is not a technical or minor infraction under LexTran's own standards. The submission of a materially false or misleading official report under color of state law, for the purpose of justifying conduct against Plaintiff, violates 42 U.S.C. § 1983 and is actionable under KRS 519.040 and KRS 446.070. LexTran and LFUCG bear Monell liability for the failure to train supervisors on accurate and truthful incident reporting.

## IX. DAMAGES

**67.** Plaintiff sets forth below the maximum amount she believes the evidence supports for each claim, subject to proof at trial:

| Claim / Violation | Responsible Parties | Maximum Sought |
|---|---|---|
| Count I — First Amendment Retaliation | William G., Holland, LFUCG, LexTran | $500,000 |
| Count II — Fourth Amendment — Seizure of Property | Holland, LFUCG | $100,000 |
| Count III — Fourth Amendment — Seizure of Person | Holland, LFUCG | $300,000 |
| Count IV — Fourteenth Amendment — Equal Protection | All Defendants | $500,000 |

| | | |
|---|---|---|
| Count V — Monell — Policy, Custom, Failure to Train | LFUCG, LexTran | $2,000,000 |
| Count VI — False Reporting to Authorities | William G. | $250,000 |
| Count VII — Harassment | William G. | $500,000 |
| Count VIII — Trespass to Chattels / Conversion | William G., Holland | $50,000 |
| Count IX — Record Falsification / Official Document Fabrication | William G., LexTran, LFUCG | $500,000 |
| Punitive Damages — William G. (individual capacity) | William G. | $150,000 |
| Punitive Damages — Officer Holland (individual capacity) | Holland | $150,000 |
| **TOTAL MAXIMUM SOUGHT** | | **$5,000,000** |

**68.** Punitive damages are sought only against the individual Defendants in their individual capacities. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

## X. PRAYER FOR RELIEF

**69.** Plaintiff respectfully asks that this Court enter judgment in her favor and grant the following relief:

- Compensatory damages in an amount to be proven at trial, including for violation of constitutional and statutory rights, emotional distress, and interference with Plaintiff's property and lawful use of public transit;
- Punitive damages against Defendants William G. and Officer Holland in their individual capacities, to the extent permitted by law, for conduct undertaken with reckless or callous indifference to Plaintiff's federally protected rights;
- A declaratory judgment that Defendants' conduct violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments and the statutes cited herein;
- Injunctive relief requiring LFUCG and LexTran to adopt and enforce written training on: (a) LexTran's published bicycle and accommodation policies for supervisors and operators; (b) independent investigation requirements for LPD officers responding to transit-employee reports before seizing a passenger's person or property; and (c) accurate, truthful, and complete incident reporting by LexTran supervisors acting in an official capacity;
- Adverse inference instructions or sanctions regarding the missing dispatch communication log for LexTran Route 6 on May 13, 2026, and any other evidence shown to have been lost, suppressed, or not preserved following Plaintiff's Open Records demands;
- Costs of this action as allowed by law, including under 42 U.S.C. § 1988 and any attorney's fees to which Plaintiff may become entitled;
- Such other and further relief as this Court deems just and proper.

Respectfully submitted,

**Hyper Quency Modula**

1018 E. New Circle Road, #105C

Lexington, KY 40505

Pro Se Plaintiff

Date: 07-20-2026

**EXHIBIT LIST**

Exhibit A — William G. LexTran Incident Report, May 13, 2026 (reproduced in full in Section IV)

Exhibit B — Plaintiff's video footage, May 13, 2026 (complete recording)

Exhibit C — Officer Holland body-worn camera footage (as filed by Defendants)

Exhibit D — LexTran published bicycle policy (all buses / two standard bicycle capacity)

Exhibit E — LexTran Open Records responses and all produced records not separately itemized below

Exhibit F — Plaintiff's May 7, 2026 written safety complaint to LexTran

Exhibit G — March 13, 2026 arrest and dismissal records

Exhibit H — Defendants' Memorandum in Support of Motion to Dismiss and all admissions contained therein

Exhibit I — Comparator video footage of other passengers boarding LexTran buses with e-bikes without incident

Exhibit J — LexTran's June 15, 2026 Open Records response (via counsel), responding to Plaintiff's June 8, 2026 request and confirming that LexTran's search identified no responsive trespass records of any kind in its custody or control

Exhibit K — LexTran's July 17, 2026 Open Records response (via counsel), confirming no dispatch communication log for the incident window, no email/photograph sent to the Safety Director, no policy guidance issued to the Route 6 operator regarding e-bikes, no training materials on bicycle/e-bike policy, and no disciplinary or corrective record regarding William G. or the May 13, 2026 incident

Exhibit L — LexTran's June 1, 2026 supplemental Open Records response (via counsel), confirming no prior bicycle-related incidents, citations, or exclusions exist for the period January 1, 2024 through May 16, 2026, and identifying the 2-Wheel Scooter memorandum as the only responsive record concerning bicycle rule enforcement

Exhibit M — 'Two-Wheel Scooters on LexTran Vehicles' memorandum, dated May 2, 2024, from LexTran's Director of Safety & Security to all operators

Exhibit N — LexTran Employee Code of Conduct, effective June 15, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of July, 2026, the foregoing Complaint was filed electronically with the Clerk of Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

**Hyper Quency Modula**
Pro Se Plaintiff

See full answers on AD (3 of 3)

B. When did these events happen?

See AD (1 of 3)

C. Where did these events happen?

See AO (2 of 3)

D. What rights under the Constitution, federal law, federal regulations, state law, or state regulations do you allege the Defendant(s) violated? State the specific constitutional provision or law if you know it.

See AO (3 of 3)

## IV. Exhaustion of Administrative Remedies

A prisoner must complete all steps of the prison's grievance process before filing any lawsuit that relates to prison conditions.

A. **Federal Prisoners** answer the following:

1. Did you file a grievance regarding the facts in this Complaint under Bureau of Prisons regulations? YES (____) NO (____)

2. If so, did you (check **ALL** that apply): (Not A Prisoner)
   _____ file a request or appeal to the Warden _______________ date
   _____ appeal to the Regional Director _______________ date
   _____ appeal to the Office of General Counsel _______________ date

3. **ATTACH** a copy of each grievance or appeal form you filed and the prison's response(s) to each grievance or appeal.

4. What was the result? Please See AO (3 of 3)

My Hands Were Hurting So I typed up all the answers. Thank you

5. If you did not file a grievance, why not?

Please see AO (3 of 3)

— Not A Prisoner

B. **State Prisoners** answer the following:

1. Did you file a grievance regarding these facts under Kentucky Department of Corrections CPP 14.6 or an appeal of a disciplinary decision to the warden under CPP 15.6? YES (___) NO (___)

2. If you filed a grievance under CPP 14.6, did you (check **ALL** that apply):

_____ file a grievance and seek an informal resolution ________ date
_____ request a hearing from the Grievance Committee ________ date
_____ appeal to the Warden ________ date
_____ appeal to the Commissioner ________ date

Did you file an appeal of a disciplinary decision to the warden under CPP 15.6?
YES (___) NO (___)
________ date

3. **ATTACH** a copy of each grievance or appeal form you filed and the prison's response(s) to each grievance or appeal.

4. What was the result? Not A Prisoner

5. If you did not file a grievance, why not?

C. **County or City Prisoners** answer the following:

1. Is there a grievance/appeal policy at your jail? YES (__) NO (__)
2. **ATTACH** a copy of the grievance/appeal policy to your Complaint, if available. If not, briefly describe the grievance/appeal policy below.

____________________________________________

____________________________________________

3. Did you file a grievance regarding these facts? YES (__) NO (__)
4. If you filed a grievance:

a. What steps did you take to use the grievance process? ________________

____________________________________________

Not A Prisoner

____________________________________________

____________________________________________

b. What was the result? ______________________________

____________________________________________

____________________________________________

c. If unsuccessful, did you file an appeal? YES (__) NO (__)

d. What was the result? ______________________________

____________________________________________

____________________________________________

e. Did you take any further steps in the grievance process?

YES (__) NO (__) NO MORE AVAILABLE (__)

f. What was the result? ______________________________

____________________________________________

____________________________________________

5. If you did not file a grievance, why not?: ________________________

____________________________________________

____________________________________________

____________________________________________

____________________________________________

## V. OTHER LAWSUITS

A. Have you filed any other lawsuit **dealing with the same facts** raised in this action? YES (___) NO (✓)

B. If your answer to question A is **YES**, describe the lawsuit in the space below. If you filed more than one other lawsuit, provide the same information for each other lawsuit on additional sheets of paper.

1. PARTIES:

Plaintiff: No other lawsuits with the same

Defendant(s): facts.

2. COURT: (name the district for a federal court, or the county for a state court)

____________________

3. CASE NO.: __________ DATE FILED: __________

4. OUTCOME: (is the case still pending? was it dismissed? being appealed?)

____________________

5. DATE OF JUDGMENT, DISMISSAL, or APPEAL: __________

C. List any other lawsuits that you have filed in any state or federal court:

1. Plaintiff __________ vs. Defendant(s) __________
   Court Name: __________ Case No.: __________
   Nature of Claim: __________ Date Filed: __________
   Outcome: __________ Date: __________

2. Plaintiff __________ vs. Defendant(s) __________
   Court Name: __________ Case No.: __________
   Nature of Claim: __________ Date Filed: __________
   Outcome: __________ Date: __________

3. Plaintiff ______________ vs. Defendant(s) __________________________

Court Name: ______________________________ Case No.: __________

Nature of Claim: ___________________________ Date Filed: __________

Outcome: _________________________________ Date: ___________

## VI. Relief:

State exactly what you want the Court to do for you. You don't need to make legal arguments or refer to any cases or statutes, just explain what you want to happen if you prevail on your claim.

See A(3 of 3) Please

## VII. Review this Form

Please take a moment to go back and review your responses to each of the questions. Immediately below you are required to certify under penalty of perjury that the information you have provided in this form is correct to the best of your knowledge, so please make sure that your responses fully and accurately explain your claim.

## CERTIFICATION

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

[signature] Signature of Plaintiff — N/A Prison ID# — 07-20-2026 Date

Plaintiff's Address: 1018 E New Circle Rd, # 105C, Lexington, KY, USA, 40505. (Mailing)